IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| COLONY INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 11-2866-STA-dkv |
| | ) |
| DAVID J. JOHNSON, P.C.; DAVID J. JOHNSON; | ) |
| CYNTHIA BRIGANCE; NOTREDAN, L.L.C.; | ) |
| REALTY TITLE AND ESCROW COMPANY, INC.; | ) |
| ALAN MICHAEL ALABASTER, M.D.; and STEVEN | ) |
| ALABASTER, M.D., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
ORDER GRANTING MOTION TO TENDER PREMIUM**

Before the Court is Plaintiff Colony Insurance Company's ("Colony") Motion for Summary Judgment (D.E. # 52) filed December 31, 2012. Defendant Notredan, L.L.C. ("Notredan") filed a Response (D.E. # 57) on January 25, 2013, stating it did not oppose this Motion. No other party still in interest has filed a response to this Motion. For the reasons given herein, the Court hereby **GRANTS** this Motion.

Also before the Court is Colony's Motion to Tender Premium (D.E. # 54) filed January 4, 2013. No party still in interest has filed a response to this Motion. Seeing no opposition, the Court hereby **GRANTS** this Motion and **ORDERS** Colony to pay the sum of $1,459 into the Court.

1

## BACKGROUND

As this Motion for Summary Judgment is unopposed, the Court will take the facts contained in Colony's Statement of Material Facts (D.E. # 52-2) as established.[1]

On March 15, 2011, Defendant David J. Johnson ("Johnson"), on behalf of David J. Johnson, P.C. ("DJPC") signed an application ("Application") for insurance coverage through Colony. (Application at 4, D.E. # 52-9.) The Application contained a representation that DJPC was not aware of "any incident, act, error or omission that may result in a claim or disciplinary action being brought against you." (*Id.*) DJPC warranted "the information contained herein is true and it shall be the basis of the policy of insurance[.]" (*Id.*) The Application also bound DJPC to provide supplemental information "if the information in this application or any attachment materially changes between the date this application is signed and the effective date of the policy" and that Colony might use any supplemental information to "modify or withdraw any outstanding quotation or agreement to bind coverage." (*Id.*)

Colony issued a claims-made insurance policy to DJPC effective from May 2, 2011 to May 2, 2012. (Policy, D.E. # 52-10.) Colony cancelled this policy on August 2, 2011 for nonpayment of premium. (*Id.*) The Policy reiterated that DJPC warranted the accuracy of the information provided in the Application as of the inception of the Policy. (*Id.* at 6-7.) The terms of the Policy also included a declaration that DJPC knew "of no 'claim', incident, event, offense or circumstance which has taken place . . . which may render inaccurate, untrue, incomplete or misleading any information or statement made in [the Application] or other correspondence[.]" (*Id.*)

---

[1] *See* L.R. 56.1(d).

The Policy covers claims arising out of the provision of "legal services." (*Id.* at 6.) The Policy goes on to define "legal services" to include acts of any DJPC attorney as "an Administrator, Conservator, Receiver, Executor, Trustee, Guardian or while acting in a similar fiduciary capacity for clients of the 'Named Insured.'" (*Id.* at 21.) The Policy excludes coverage for any claim "[b]ased on or directly or indirectly arising from . . . 'Legal Service' rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the 'Legal Service' could give rise to a 'Claim.'" (*Id.* at 7.) The Policy also excludes coverage for any claim that arises out of "(1) Any act committed with knowledge of its wrongful nature or with intent to cause damage; (2) The gaining by any insured of any personal profit, gain or advantage to which an insured is not legally entitled; or (3) Any criminal, fraudulent, or dishonest act." (*Id.* at 8.) Further, the Policy does not cover "any fine, sanction or penalty of any nature against any insured," nor does it cover "punitive, exemplary or multiple damages or claims for equitable or non-pecuniary relief." (Policy at 8, 17.)

On August 16, 2012, Johnson pleaded guilty to wire fraud in violation of 18 U.S.C. §1343. (Change of Plea Hearing at 28, D.E. # 52-3.) The substance of the wire fraud charge was a scheme to defraud his clients, including Defendants Notredan; Michael Alabaster, M.D. ("M. Alabaster"); Steven Alabaster, M.D. ("S. Alabaster"); and Realty Title. (*Id.* at 12-13.) Johnson took client funds from escrow and trust accounts to operate his personal businesses and would "cover" withdrawals from client escrow and trust accounts with transfers from other client trust and escrow accounts. (*Id.* at 25-27.) As part of this scheme, Johnson wired $25,000 from Regions Bank to the Bank of Holly Springs on April 4, 2011. (*Id.* at 28.) Neither Johnson nor DJPC notified Colony Johnson had misappropriated trust assets. (Donovan-Schager Aff. ¶ 4, D.E. # 52-11.)

Realty Title sued Johnson and DJPC on May 4, 2011, alleging DJPC failed to pay Realty Title $206,838.01 owing from the sale of real estate. (Realty Title Compl., D.E. # 1-4.) Notredan sued Johnson and DJPC on June 8, 2011, alleging DJPC failed to remit $525,000 owing from a real estate transaction. (Notredan Compl., D.E. # 1-2.) The Chancery Court of Shelby County, Tennessee entered judgment for Notredan on this suit on September 12, 2011. M. Alabaster and S. Alabaster sued Johnson and DJPC on July 15, 2011, alleging a failure to pay $240,000 DJPC owed the Alabasters from the sale of a parcel of real estate. (Alabaster Compl., D.E. # 52-6.) Colony agreed to defend these suits under a reservation of rights, pending the outcome of this suit. (Compl. ¶ 14, 19

The Policy excludes coverage for any claim "[b]ased on or directly or indirectly arising from . . . 'Legal Service' rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the 'Legal Service' could give rise to a 'Claim.'" (Policy at 7.) The Policy also excludes coverage for any claim that arises out of "(1) Any act committed with knowledge of its wrongful nature or with intent to cause damage; (2) The gaining by any insured of any personal profit, gain or advantage to which an insured is not legally entitled; or (3) Any criminal, fraudulent, or dishonest act." (*Id.* at 8.) Further, the Policy does not cover "any fine, sanction or penalty of any nature against any insured," nor does it cover "punitive, exemplary or multiple damages or claims for equitable or non-pecuniary relief." (Letter, D.E. # 1-5.)

Colony argues it is entitled to an order granting it the right to rescind the Policy; in the alternative, Colony argues it is entitled to a declaratory order that it is under no obligation to defend Johnson or DJPC in the Realty Title, Notredan, or Alabaster suits.

4

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] If a party fails to address another party's assertions of fact, a court may grant summary judgment if the motion and supporting materials show the movant is so entitled.[3] In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.[4] As a result, the "judge may not make credibility determinations or weigh the evidence."[5] When the moving party supports the motion with documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings, but must present some "specific facts showing that there is a genuine issue for trial."[6] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[7] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[8] When determining if summary judgment is appropriate, a court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[3] Fed. R. Civ. P. 56(e).

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[6] *Celotex*, 477 U.S. at 324.

[7] *Matsushita*, 475 U.S. at 586.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

of law."[9]  A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[10]  In the Sixth Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[11]

## ANALYSIS

Colony argues it may rescind the Policy as Johnson and DJPC made a material misrepresentation that increased Colony's risk of loss when negotiating the Policy.  Colony argues in the alternative that it has no duty to defend the underlying lawsuits at issue here, as each is the result of activity specifically excluded in the Policy.  Colony further argues it has no duty to pay any claims arising as a result of awards of punitive or exemplary damages.

The Court determines Colony is entitled to rescind the Policy.  A district court sitting in diversity will apply the substantive law, including choice of law rules, of the state in which it sits.[12]  Tennessee law provides

> No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.[13]

---

[9] *Id*. at 251-52.

[10] *Celotex*, 477 U.S. at 322.

[11] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 857 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[12] *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820 (6th Cir. 1990)).

[13] Tenn. Code. Ann. § 56-7-103.

Therefore, if a representation increases the risk of loss it will be material.[14] A material misrepresentation "renders [a] policy voidable."[15]

The Court finds Johnson's failure to disclose his fraudulent transaction of April 4, 2011 was a misrepresentation. In the Application, Johnson warranted there were no "incident[s], act[s], error[s] or omission[s] that may result in a claim or disciplinary action being brought against you." Johnson and DJPC further agreed to supplement this information if they became aware of any incidents, acts, errors, or omissions that might result in a claim between the time of the Application and the effective date of the Policy; and that such information would provide a basis for issuance or denial of the Policy. Johnson signed the Application on March 15, 2011. Colony issued the Policy with an effective date of June 22, 2011. It is indisputable that the fraudulent transfer of $25,000 from a trust account might "result in a claim . . . being brought" against Johnson and DJPC.[16] Therefore, Johnson and DJPC had a duty to report his fraudulent activity to Colony, and the failure to do so constituted misrepresentation.

Similarly, the Court finds this misrepresentation increased Colony's risk of loss. The Policy provided coverage for claims arising out of Johnson's actions as a trustee. Misappropriation of trust assets by a trustee would unquestionably increase Colony's risk of paying a claim, and in fact has resulted in Colony's qualified defense of three claims. Therefore, the Court holds Johnson and DJPC's failure to disclose Johnson's actions on

---

[14] *Broyles v. Ford Life Ins. Co.*, 594 S.W.2d 691, 693 (Tenn. 1980) (quoting *Little v. Wash. Nat. Ins. Co.*, 241 S.W.2d 838, 840 (Tenn. Ct. App. 1951)).

[15] *Bagwell v. Canal Ins. Co.*, 663 F.2d 710, 712 (6th Cir. 1981) (quoting and affirming the court below).

[16] *See* Donovan-Schager Aff. ¶ 5-7.

April 4, 2011 a material misrepresentation that increased Colony's risk of loss, entitling Colony to rescission of the Policy. On this basis, the Court **GRANTS** Colony's Motion for Summary Judgment. Because Colony is entitled to rescind the Policy in its entirety, the Court finds it unnecessary to analyze Colony's other arguments.

## CONCLUSION

Because Johnson and DJPC's failure to disclose Johnson's April 4, 2011 actions constituted a material misrepresentation that increased Colony's risk of loss, the Court finds Colony is entitled to rescind the Policy. The Court hereby **GRANTS** Colony's Motion for Summary Judgment. The Court also **GRANTS** Colony's Motion to Tender Premium and **ORDERS** Colony to pay $1459 into the Court.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  April 2, 2013.